## CLARK ET AL, VS. BARNETT.

C sold to P one half of a parcel of land and mill, for a certain amoumt, part in cash and part on credit, and executed a bond for title on payment of the residue; afterward P agreed to re-convey his interest to C on certain terms, a part of which was performed; and C remained in possession of the property as sole owner: subsequently P conveyed all his interest in the property to the complainant, who filed a bill for specific performance of the first contract; and the heirs of C, who had died, filed a cross bill for specific performance of the second contract.

*Held :*   1st.   That the circuit court erred in vesting title to one half of the land and mill in the complainant, under the first contract, regardless of the second and its part performance.

2d.   That the complainants had no right to a decree cancelling the bond for title without showing a full performance of the second contract.

It is the settled practice in this court not to disturb the decree of the court below for errors committed against a party who does not appeal from the decree. (14 *Ark.*, 125 ; 20, *ib.*, 526.)

*Appeal from Independence Circuit Court.*

Hon. W. C. BEVENS, Circuit Judge.

FAIRCHILD for the appellants.

BYERS and STILLWELL and WOODRUFF for appellee.

Mr Justice COMPTON delivered the opinion of the court.

On the 21st day of August, 1846, James Clark, who was then the owner of certain saw and grist mills, and nine acres of land adjacent thereto, known as the "mill tract," agreed to sell an undivided half of the same to Thomas S. Palmer for $493.74.   At the request of Clark, Palmer paid $100.00 of this sum to John Ringgold, and made his promissory note to Clark for $393.74, the residue; whereupon Clark executed to Palmer his written obligation, commonly called a title bond, in which he bound himself to convey the premises, upon payment of the remainder of

the purchase money. Under this contract Palmer went into possession, and worked the mills jointly with Clark until the 27th January, 1847, when, having become dissatisfied with the business, he entered into another contract with Clark by which, in consideration that Clark would surrender the note of $393.74, refund the $100.00 paid to Ringgold, pay a certain note Willis Brewer held against him, and collect and pay over to him one-half the net profits arising from the mills, while they were run on joint account, he bound himself to reconvey his interest in the mills to Clark. After the making of this latter contract, Palmer ceased to participate in the management of the mills. Clark alone remained in possession and conducted the business on his own account, and for his own use. On the 24th December, 1851, Palmer conveyed his interest to John Barnett, or, as both parties admit upon the record, substituted Barnett to all his rights, whatever they might be, growing out of the transactions in relation to the mills. Clark died in 1849, and on the 5th December, 1852, Barnett, as the assignee of Palmer, filed his bill in chancery against the heirs and executors of Clark, for specific performance of the contract of 21st August, 1846. The bill alleges full performance of the contract by Palmer, but does not mention, or in any way refer to to the subsequent contract of 27th January, 1847, under which Palmer bound himself to re-convey the premises. The heirs and executors of Clark answered the bill, resisting the relief sought, and also filed their cross bill against Barnett and Palmer, setting up the contract of 27th January, 1847, alleging a performance of it by Clark, and praying that the title bond of 21st August, 1846, might be canceled and their title quieted.

In addition to the facts already stated, it was clearly proven that Clark had surrendered to Palmer the note of $393.74, had refunded the $100.00 paid to Ringgold, with the exception of $5.00, and had been left in exclusive possession of the mills, as part performance of the contract of 27th January, 1847.

On the final hearing, the circuit judge, sitting in chancery,

dismissed the cross bill, and decreed for the complainant in the original bill, vesting him with title to an undivided half of the mills, and the nine acres of land, as specific performance of the contract of 21st August, 1846, regardless of the contract of 27th January, 1847, and of its part performance by Clark. How, or on what ground the judge in the court below reached his conclusion, we are not informed. In view of the facts of the case—and as to them there is no room for doubt or controversy—the decree cannot be sustained upon any established principle of law or equity—it is palpably erroneous. Palmer having received back from Clark the entire consideration, lacking the $5.00, above referred to, which he was to pay for the premises, the effect of the decree, leaving out of view the rights of Clark's heirs under the contract of 27th January, 1847, was to divest their title for the sum of $5.00, when they were to have $493.74, according to the terms of the contract upon which the decree of divestiture was founded.

The evidence, however, fails to show full payment of the several sums due from Clark to Palmer, under the contract of 27th January 1847, to the unpaid balance of which—being $5.00 of the $100.00 paid Ringgold, the amount of the note to Brewer, and one-half the net profits of the mills while they were worked on joint account—the complainant in the original bill is entitled; and until payment thereof by the heirs of Clark they cannot have the relief prayed for in the cross bill. The amount, however, of this unpaid balance cannot be ascertained upon the evidence before this court, it not sufficiently appearing what sum was due on the note to Brewer, nor what were the profits of the mills.

Whether the witnesses, Andrew J. Clark and George J. Hodges were competent or not, it is immaterial to enquire. If the court erred in permitting their depositions to be read, the error was against the complainant in the original bill, who did not appeal; and it is the settled practice in this court not to disturb the decree of the court below for errors committed against

a party who does not appeal from the decree. *Stone vs. Ringgold*, 20 *Ark.*, 526 ; *Dooley vs. Dooley*, 14 *Ark.*, 125.

Let the decree be reversed; and the cause be remanded with instructions, to the court below, to ascertain, by reference to the master, the amount of the unpaid balance due to the complainant in the original bill, as indicated in this opinion, and on payment being made to him of the sum so ascertained, to decree for the complainants in the cross bill, in accordance with its prayer, and dismiss the original bill.

Mr. Justice FAIRCHILD did not sit in this case.